Case numbers 23-5045 and 23-5047 Daniel Creger v. Andrew Tucker et al. Order does not to exceed 15 minutes per side. Mr. Burns you may proceed for the appellants. Your honors, good afternoon. My name is Robert Burns. My co-counsel in this case is Samantha Burnett. We represent Officer Andrew Tucker in the town of Smyrna, Tennessee. We're here today on a case which involves an unfortunate and sad set of facts. It's tied to some issues of domestic abuse with the plaintiff and his family. This case admittedly involves the plaintiff and his now ex-wife in a history of a very rocky relationship which included, prior to the events in which this case is based, one arrest and a conviction for a domestic abuse charge of sorts in the state of Wisconsin. Unfortunately, the conflict and strife, if you will, on which this case is based spilled out onto Interstate 24 in Smyrna, Tennessee in Rutherford County on May 22, 2019. It resulted in a chase or a vehicular pursuit of sorts. Mrs. Creger... Mr. Burns, can I interrupt you? Yes, sir. We've got the record. We know what happened here. I think it's an interesting segue when you started out that this case has been full of strife. I just want to make it clear that you know that I believe that this is one of the worst examples of lawyering on both sides of the case that I've seen in a long time. This idea that you file a joint statement of facts that has 315 purportedly material facts is, in my 31 years, one of the most ridiculous things that I've ever seen. But it didn't get any better because then that document had ballooned to 95 pages once there's a response. And then you and Smyrna filed 220 pages of exhibits. There's no surprise why the district judge just threw up his hands here and said, you guys have no idea what you're doing. I'm not going to do your work for you. But then you come here and you persist again. So now we have to do that work for you, which is not our job. And I just don't want there to be any secret or surprise here about how dismayed I am by both parties in this case. Well, Your Honor, I appreciate your candor and I appreciate where you're coming from. Respectfully, I will submit. I would really suggest that you not put but in there or respectfully submit and then go on. Let's go to the merits of this case. You've heard me. OK, well, the merits begin from our estimate with the ruling by the district judge. You've addressed the memorandum of opinion from Judge Crenshaw. It was five pages in length. Respectfully, we submit that the facts that were presented and the facts that we repackaged in our appellate brief from pages 4 to 21 represent a set of facts, material, which are undisputed on which Officer Tucker can be and should be granted qualified immunity for the arrest charges. I think the key underlying issue is how do we have jurisdiction? The usual methodology of addressing this is that you look to the findings of fact of the district court. And that governs whether you actually meet your burden to come before this court so that there is jurisdiction. My understanding is it's your burden as the defendant to show that there are no materially disputed facts and that you are entitled to qualified immunity. How do we get there when the record presented to the district court was such that the judge determined the rules were not met or satisfied and he was not going to make any findings? Well, Judge, to answer that question, I respectfully disagree. I think that there were enough facts that were presented which Judge Crenshaw decided not to rule upon because he said that he did not have the time, resources, or inclination to wade through what he characterized as an insufficient record. I believe that the record was sufficient and based upon the statements and the responses that came back from the plaintiff. I think here's my problem, counsel. The record and your burden has to do with disputes of material fact. And what you have is pages and pages and pages of disputes of immaterial fact. Well, Your Honor, again, the brief that we submitted in support of this appeal on behalf of Officer Tucker, pages 4 through 21, include a recitation of facts which were not disputed. And we submit that those facts, presented as they were in the district court and now presented again on appeal, are sufficient to entitle him to a judgment as a matter of law. There are many facts in this case that were not disputed which go to both the charges and the outcome of the charges and the issue of probable cause. And with respect to your question regarding jurisdiction, I think the case law in this circuit provides that there's a legal issue here as to whether or not the district court properly assessed the record. Admittedly, and I'll say this with some qualification because I have the utmost respect for Judge Crenshaw, but he made a decision that appears to have been based on the fact that he didn't want to deal with this case. And I understand... What he made a decision on, counsel, was that he wasn't going to do your job for you. And that's a very different decision to make. Your job was to come forward with material to show whether there were any materially disputed facts. And so my question is, what you're proposing seems to me to be that below you can play with huge amounts of information and fight as if you were in divorce court. And then if it comes up to us, we have to do the job that was in fact both of your jobs, both sides in this case, your jobs, to determine what is a material fact that is undisputed. I don't know that I want to send a message to district courts that says, if somebody plays this kind of game and you don't work your way through 500 pages of petty complaints, then we will take it over and do that job for you. So what's your solution to this problem? Well, my solution, Judge, is that you can look at the record and you can look at the facts that we contend are undisputed. And I would submit as well that even though Judge Crenshaw did not reach a resolution of the record or of those facts as being part of the record to consider the issue of qualified immunity, it appears that he was thinking or leaning that way because he made comments to the effect of, one, the facts in this case are seemingly simple and undisputed. He also went on to say, to chastise candidly plaintiff and plaintiff's counsel in terms of the responses and the insufficiency of the responses made to the statements of undisputed material facts. Two of those examples were made over the nitpicking, if you will. Let me interrupt you for a moment. Yes, sir. When I was practicing in the district court, those courts had undisputed statements of material facts. One side went forward, went first. Then the other side went second. And then the last thing that the document said was whether you agreed on the statement, on the facts that were disputed and material. Is there such a thing in this record where the parties have agreed what is both material and disputed? Your Honor, beyond what was filed... I'm not asking you to go back and forth between briefs. Is there one piece of papers that say what is disputed and material? It would only have to be the response that was filed to the statement of undisputed material facts by the plaintiff. So the answer is no. And so, what Judge Grant is pointing out to you, then we've got to take it upon ourselves to figure out, one, what is really disputed? And two, of the things that you guys say are disputed, which are material, which is hardly anything of anything that you filed. Well, again, Judge, I have to stand on my position that I've stated already. The facts that we highlighted in our appellate brief from pages 4 to 21 are the facts that are in the record that are not disputed. I maintain that they are relevant and they are material for the issue of qualified immunity. With all due respect to the district court, the district court did not reach a decision which put us into the position of filing this appeal. It was tantamount to a denial. I reasonably believed at the time, and I still believe today, that the appeal here was certainly in good faith and that this court does have jurisdiction to determine as a legal issue whether or not the district court made a determination of what the record should comprise of. And based on that, this is a de novo review coming out of a motion for summary judgment. And I submit that based upon the record that we have, Officer Tucker is entitled to qualified immunity because there was ample evidence, I believe, that's in the record to support a finding of probable cause on the charges of harassment, stalking, and then the later charges related to the violation of the order of protection and the felony count that came out of his actions related to the violation of that order of protection itself. There's another issue in this case related to waiver of the qualified immunity argument. I hate to be, I don't want to sound flippant to anyone or certainly to the court, but Mr. Krager has very experienced counsel here and he didn't even address qualified immunity. I mean, literally the words, and this may seem petty or small or little, but the words qualified and immunity were not even in the responsive brief on the motion for summary judgment. The court noted that as well. Can I ask you a couple of substantive questions for you? Yes, sir. The stalking charge, there has to be a course or pattern of conduct and I'm curious what your view is on that. It seems like the texts and the following her were all within kind of the same course of conduct. Is that, it doesn't seem like it's separate, like two different incidents. We characterize that and I would say that it was a course of conduct. That all occurred over an afternoon, a period of several hours, and if we are addressing specifically the issue of qualified immunity as it relates to whether there's any case law that was preexisting at the time that this happened, no one has cited any case law in opposition to the qualified immunity motion to say that that is not a course of conduct. Even if the court were to find that it's not. I'm not sure how the clearly established, you're making clearly established argument, I'm not sure how that would work, but it's got to be two or more separate non-continuous acts, and I'm still, is the text, one of the, or two of these texts are different than the following, is that right? Well, we have the texts and then interspersed in between that we've got the whole event that took place on I-24 with the chasing and the pursuit that led Mrs. Krager and her two daughters to go to the police department to begin with. Right, but that's one, so what's the other, what else? It's the texts and the pursuit itself. That would be the two. Okay, and was it, okay, all right. Now let me ask you on the later incidents. Yes, sir. The, we would have to construe, so he says he didn't know, he went to the open house and doesn't know that his wife is living in the neighborhood, right? That's what he says. Okay, but that, but we, that's, is that a disputed issue or we're accepting his version, right? Well, we would be accepting his version, but he's there and admittedly there's no dispute over the texts that occurred on the 5th and 6th of June. And there shouldn't be any dispute either that he knew about the issuance of the protective order and that that order was... Are you saying, at the time of the open house, though, he didn't, his version is I didn't know about the protective order. The bail conditions are in place, but not the protective order, right? Well, the protective order is in place. I know, but it wasn't served, even though your client apparently says he served it when he didn't. Well, the qualifier with that judge is that within 24 hours of the issuance of the protective order, Mrs. Krager's divorce attorney, Mr. Daryl South... Right, but if we're taking all the inferences are in his favor, so he says my attorney didn't tell me about that. So we take that as a given, right? Well, if that's what he says, great, but the law in Tennessee is clear that if the attorney knows about it, then that knowledge gets charged to the plaintiff. There's no dispute over that point of law, or there should not be. Okay. And he also showed up at the police department... I don't want to take up all the time. You'll have your rebuttal time. Yes, thank you. Good afternoon, Your Honors. Kyle Mothershead for EPA-LEA, Mr. Krager. I'll just say... Mr. Mothershead, before we even get started, I want to say the same thing to you that I said to Mr. Burns. This is the worst collective set of lawyering I've seen, close to the top of the list in 31 years, and I'm stunned by after Tucker files 220 pages of exhibits to respond to a statement of facts, you then file a staggering 450 pages of exhibits. Now, what makes you think that any federal judge in the country is going to sit down and go through all of that stuff when neither of you guys did your jobs? I appreciate what the Court is saying. The way the local rule works for us, we don't come up with a joint statement of facts. They submit what they purport to be the undisputed material facts. And I'm controlled by that list. I must respond to it. If I don't respond to it, then it's admitted. So anything I fail to respond to, and if I think there's rebuttal evidence, present that evidence, then I've conceded those points. Not just for summary judgment, but for the trial too. Now they're just undisputed facts. And so by listing this insane amount of facts out, which they chose to do, I didn't have any control over that. It forced my hand to put everything we had to rebut, everything they put out there. And the district court has interpreted that local rule. Judge Richardson in this McElmore opinion, the defendant is basically declaring in their statement what the material facts are. And as Judge Richardson put it in McElmore, it's like they do it at their peril, because if they put too many things as material facts, well then that's all the more ways to lose summary judgment. But, you know, the defendants declared it, that those are all material facts, and so I have to respond to them. So I understand it's cumbersome and it's absurd. Did anybody ever give any thought to going back to Crenshaw and saying, hey, this just isn't working? We need your help, Judge, to get down to a true statement of material disputed facts. Well, he denied their motion and then they appealed. I mean, he ordered us into mediation, they appealed. That's what happened. So the answer is no. Even though you saw this as going off the rails, nobody thought to go back and talk to the judge. Well, candidly, I'll tell the court that I went to a CLE, you know, the district court was having, and I had read the McLevore opinion, and they were saying, you know, does anyone have any commentary about any of our local rules? And I said, well, gosh, you know, parties interpret this local rule about making these fact statements to mean I've got to put the whole kitchen sink in there, and to cover your own bases, you feel like you have to put it in there. And then it balloons into this crazy, crazy amount of, you know, pages that I had just filed this, and, you know, feeling like I had to file it. And so I did complain about, I didn't name the case, but, like, I did kind of complain about how it played out in this case, as couldn't we have Judge Richardson's opinion as, you know, the text of the rules? Okay, that's enough. Thank you. So the other, I mean, the other, you know, kind of error I'll certainly own, you know, I have been litigating this kind of issue, these kinds of cases, for a decade now. And I did, in the district court brief, kind of take for granted, you know, the sort of basic framework, and I could have certainly spelled out better, you know, in order to overcome qualified immunity, we need to show that warrants were submitted with, you know, falsehoods and material omissions. And there are cases in the brief that have that rule, and it's there, but I kind of skipped to the substance. And I certainly copped to that, that the, you know, the brief is heavy on state law, and the, you know, the state law case is interpreting, like, vigil that talks about the, you know, stalking has to have two separate, totally separate incidences, and, you know, that was a case about, you know, somebody following somebody around and texting them. You know, and the factual record, you know, our filings are very, very heavy on disputing the facts and kind of showing, you know, how the state law was clearly established in a way that makes those facts that we present material, but it certainly could have done a better job of just, you know, kind of framing it out as, you know, here's the rule, you know, material falsehoods or omissions in the warrant, you know, defeat qualified immunity. And so certainly could have done that better, but I do think, you know, we put enough in that vein that I don't think we waived it or should just lose as an option. What do you think is the road forward that has any reasonable propriety? Well, I think we just go to trial. I mean, you know, the defendants filed what really is essentially an improper motion for summary judgment. I mean, essentially they just, you know, ballooned it with all these enormous statements of facts that made it impossible to rule on, and that was their opportunity to move for summary judgment. I do think, you know, that we have presented sufficient material facts that, you know, based on, you know, the contemporaneous records of the statements that were given to Tucker at the time, what was happening at the time, his deposition admission that what's in the written statements is that's all the things that mattered that he was told. And so, you know, these kind of 2022, you know, deposition testimony and declarations, this after the fact stuff, it is rebutted by what we put in the record. And so, you know, if... But if we just look, but if we just looked at the witness statements, you know, he had the phone call with your client, I'm talking about the first incident. Right. You know, we got the text, we got the pictures, we got the witness statements, we've got the phone call with your client, it's all undisputed, right? It's fair. I mean, why isn't that enough? It just has to be probable cause, right? It doesn't have to be a crime. We can debate whether that was a course of conduct or not. But if he says, look, I think this is two separate incidents, probable cause, why wouldn't that be enough? Well, I mean, vigil is there, you know, as far as, you know, he can't just say this is two separate incidents, right? I mean, vigil is there as a binding precedent about what the construction of that stalking statute. You know, on the harassment side of things, he, Tucker was made aware, he talked to my client about this was a parenting issue, we had a deal, I was going to pick them up, you know. Yes, it's undisputed that he texted her three more times and followed her for five minutes, but I mean, there's a legitimate reason for texting someone three times when they swoop in and pick up your kids and they take them away from you. So, I mean, you know, I think Tucker absolutely... Does that rise to the level of a legal action, a statement at law? Because there was no parenting plan here. They were in the midst of a divorce. I know the briefing kind of relies on the fact that something was taken away from him, but they were just a married couple who was, one of them was saying, I can't get there to pick up the girls, will you do it today? And no answer, no answer, and then he comes back and says yes, and I want to deliver them to where you are. And she says, I don't want you to know where I am. So that's the dispute, not that he had a written right or a parenting plan right or any right at all to get the girls at that location. I mean, isn't that where we are? Well, I think where we are is we're talking about the harassment statute, and one of the elements of the harassment statute is that there not be a legitimate reason for the communication. And so a very hard person, Captain Dwyer from Smyrna, acknowledged in his deposition, to say that a dad, and at the time a husband, doesn't have a legitimate reason to complain and say I was going to have my time with the girls, he's not allowed to complain. That's not a legitimate basis for communication. He's allowed to complain by following around in a car, closely behind. You know, these are the kinds of issues that just have to be resolved in an agreement between the parties as to what's a disputed fact and what's not. And I think that's where we're all struggling, is how we can go forward in this case without creating law that is a disaster to the court system. Right. And I think, you know... Unless you have a concise answer to her question, because if you do, I'd like to hear it. And otherwise, I'd like to ask another question. Well... I just wanted to point out that, you know, we have our position about the harassment statute, but I do think that the case, the stalking statute is that much clearer because it's, you know, all one continuous course of conduct, and that the hows, any crime rule precedent, you know, has this footnote, which is very applicable here, because stalking in Tennessee imposed a 12-hour hold. And so, within the rubric of the Fourth Amendment, within the rubric of a seizure and a detention, the stalking alone inflicts a detention. And this comes up again in the June 6th charges. The stalking is the weak link... We're just back into this never-never land. So let me take a pass at casting this in a slightly different way. Yes, Your Honor. You're contending that this police officer's actions violated a constitutional right. That's true. Now, that constitutional right really comes down, as Judge Albanian said, was there enough for probable cause in the affidavit. Do you agree with that? That is the issue. So the only way that you can win this case, really, is if you say that it was on a mission that was false and misleading, or if the police officer didn't do something that he was supposed to do. So if we look at it through that lens...  This guy reads a complaint that's made to the dispatcher. He then contacts the woman that had the kids. He then talks to the kids. He talks to your client. He does all of these things, and what he put in the documents that he filed with the court for both of the charges are largely verbatim statements out of the various text documents, whatever they are. So for the life of me, I can't figure out what did the police officer do? Not that it was wrong, not that he should have done something differently. It has nothing to do with whether he can actually be convicted of either of these crimes. What did he do in his limited initial role in this case that rises to the level of a constitutional violation? Well, I think looking at the warrants here is helpful. I mean, all of these warrants, all these stalking warrants, allege that Mr. Kreger put his wife and his daughters in reasonable fear of injury or assault or death, and Tucker even acknowledged it. I mean, there's nothing in the record to support that. And that allegation... But wait, just stop right there. That's what he says that the woman told him. But he doesn't... So how is that a constitutional violation? He doesn't say that the woman told him that. That's the problem. Okay, he followed her, but he... Do you have anything else other than a statement about whether she was or wasn't in fear when he's following her? Anything else that he did wrong? In the context of the harassment statute, he failed to disclose that this was a legitimate purpose for communication, that there was this parenting dispute, in which, from a family law standpoint, it's really a free-for-all. They both have rights to just go get the kids. How could the magistrate judge not have known that given what he did provide them, which was there's a dispute about picking up the kids and he follows her? Obviously, that has to do with something to do with parenting. So what are you supposed to spell it out? Is the problem he didn't spell it out? Well, especially because Mr. Krager did talk to him and did explain that that was exactly the reason for the text. I think that is exculpatory. He called Mr. Krager and said, I want to hear your side. Right, and so he told him. And he said, that's why I texted her. And then what did he say? When he told his side, and the officer said... He can do whatever she wants. The officer said that she does... I can't remember if he exactly said at that point she doesn't want you to know, but everyone understood she didn't want him to know. And did your client deny the fact that he was seeking to find out where she lived? Or did he say, I have a right to know where my girls are sleeping? I believe he said something to that effect. I believe he did too. And so what response does that indicate to this officer who is asking someone or saying, your wife is telling me that there's harassment or stalking, and maybe he didn't have to say, let me just ask you this, did he have to say, he scared her to death, or did he have to say, you followed her closely, you texted her while you were doing that, and she went to the police station and went inside and reported it. Could the magistrate not draw the conclusion from that very reasonably that she was afraid? Tucker, he didn't say you scared her to death. In fact, he said she's a little fearful. And her written statement... Exactly, but that's not the question I've just asked you. The question I've just asked you is the facts he reported, are they not sufficient for a magistrate judge to determine that there was sufficient fear or concern that it qualified for the issuance of a warrant? I don't think so. So if I am out somewhere on the street and there is an attempted carjacking or something else going on, and rather than calling people and saying, I'm scared, I'm scared, what am I going to do? I haul it to the police office and I run inside the police station and I say, this is what is happening to me. And it's your position that that is inadequate for a police officer to then replicate to a magistrate on a request for a warrant. It's a different scenario because we're talking about a divorce and we're talking about in the written statements Mrs. Kreger talking about this was her divorce attorney's advice to come in here. And we're talking about a situation in which police officers do understand that getting charges is a pretty convenient way to end run divorce court. It's very hard to get majority parenting time in divorce court. What I'm struggling with is that judges who issue warrants are aware of the fact that women are killed by their significant others with regularity. And that in this case, the husband had already been found guilty of undertaking some communal violence within the marital situation. And that is what the magistrate knew, right? That's not true. That's another falsehood. He was acquitted in Wisconsin of the domestic assault charge. He was found guilty of disorderly conduct. Well, a plea down. No, it was a jury trial and it was an acquittal on the assault. And so that is another misrepresented fact, this history of violence. It's not a misrepresentation by the police officer. The police officer is simply parroting what she told them. Now you could say that, well, he should have called Wisconsin. He should have followed up on that. But there's no duty to even do any more of an investigation that he did here. So what it comes down to to me is do you have a case, and maybe it's the one you mentioned earlier, do you have a case that says that the warrant has to set forth the elements of each potential violation and the evidence that he is relying upon for each element of that charge? Because I'm not, I might have missed one, but I'm just not aware of a case that says that. I don't have a case that says that. But I think there are certainly cases. Then if you don't have a case that says that, even if there is a constitutional violation, the law wasn't clearly established as to what duty you claim he had in what he said in the warrant affidavits that you say are incomplete. The duty that was clearly established is to be truthful in the warrant and to include material exculpatory information. So whether it was a misdemeanor or whether it was a felony or whether he pled down or not or what he pled to, that's somehow material to establish a constitutional violation in connection with this warrant application? He was not aware of it. What Tucker testified to is that he knew he was talking about one 10-year-old case. No, he didn't go pull the records. But I'm not saying this one line makes or breaks this warrant, but it's a piece of the whole package here. History of violence isn't an exaggeration of one 10-years-ago incident. That's all. It doesn't make or break the warrant. We may be so far down in the weeds that it's counterproductive. But we thank you for your argument. Your time is up. If you want to draw a quick conclusion, that would be fine. Thank you. I do think that in both sets of charges, there's even more significant fatal flaws with the stalking and that the hows allows for us to proceed on even just those charges because they resulted in additional detention because of the 12-hour holds. Thank you. Libetal. I'll be brief. This wasn't an improper motion for summary judgment. There was not a knowing, material, glaring omission of facts that Tucker knew, something that he tried to hide, something that he didn't put in, that now in retrospect... Do you think that it could be problematic, though, even if he put everything in there that he knew, if it's just obvious that there weren't two separate incidents under Tennessee law, that it just can't be stalking, that that would be problematic? I mean, it's just not probable. There just isn't probable cause because there aren't two incidents. Well, there were two charges, and the law is well established that if there's not probable cause for one but there's probable cause for harassment, there's no case here. No, no, hang on. The stalking carries with it the 12-hour hold, right? So isn't that more severe than what the harassment would have been? I mean, House v. Hodeus and then Ciavarini and some of these other cases, I think the charges are kind of equal, right? They carry with them the same punishment. You would have gotten... It's a harmless error type thing, right? I would have gotten the same thing if you throw the one out. Well, if we throw the harassment out, it doesn't matter. The stalking is what matters, and that's what I'm asking about, is the pattern. You have to have no probable cause on the stalking. Judge, as I explained before, I think the facts that he had under the circumstances that he was dealing with were sufficient. It's always so easy now to Monday-morning quarterback now with the benefit of time and all that we have before us. I mean, I generally agree with that. Yes, sir. Okay, but this one seems a little more stark, though. I mean, it's kind of like... It's stalking. It's a pattern. We're basically looking for someone who does multiple things. The paradigmatic case would be someone who you see at the grocery store, and then you see him at a school, and then they're calling your home, and then they're doing this. All of this occurs on the same like 12-hour period or whatever. It just looks a little bit different. Now, I don't know how obvious it is, and I suppose that's the argument, but I don't... I mean, I don't know any... I'm trying to find case laws. Is there some Tennessee case law that says that maybe this is closer than I'm thinking? Well, I think the lack of case law specifically to your issue, I think it's pertinent, directly pertinent, again, to the issue of qualified immunity. And if the standard, as it is the standard, that there is a... What's clearly established is that you can't have a warrant that's not supported by probable cause. This is a second-order question about whether under Tennessee law this would have been enough. Is that relevant to the clearly established federal law issue that we normally do in step two? Yes, it is, but I still contend that if you can't come forward with another case that shows that should have put Tucker on notice that what he did in terms of seeking the charge on stalking was so clearly established that he should have known that there's no basis for this, yeah, I'll concede that point, but that's not what's in this record, respectfully. That's all I have. Thank you. Thank you. We thank you both for your time. The case will be taken under advisement and an opinion issued in due course.